## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BILLIE SORRELL,

              Plaintiff,

   v.                                        Case No. 07-00854 (RWR)

DISTRICT OF COLUMBIA,

              Defendant.

### ERRATA

Defendant District of Columbia ("District"), by and through undersigned counsel, respectfully requests that the Clerk of the Court accept Exhibits A through D, which were not filed with the District's Motion to Dismiss, or in the Alternative, for Summary Judgment, Docket No. 8.

Dated: June 13, 2007.                    Respectfully Submitted,

                                LINDA SINGER
                                Attorney General for the
                                District of Columbia

                                GEORGE C. VALENTINE
                                Deputy Attorney General
                                Civil Litigation Division

                            _____/s/Nicole Lynch_____
                                NICOLE L. LYNCH [471953]
                                Section Chief
                                General Litigation § II

                            ___/s/Toni Michelle Jackson___
                                TONI M. JACKSON (453765)
                                Assistant Attorney General
                                441 4th Street, NW, 6th Floor South
                                Washington, DC 20001
                                (202) 724-6602
                                Fax:  (202) 727-3625
                                E-Mail:  toni.jackson@dc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of June, 2007, I caused the foregoing ERRATA to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Alan Banov, Esquire
ALAN BANOV & ASSOCIATES
1819 L Street, N.W., Suite 700
Washington, D.C. 20036

_____/s/Toni Michelle Jackson_____
TONI MICHELLE JACKSON
Assistant Attorney General

# EXHIBIT A

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 100-2005-01281 |

| D.C. Office Of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Billie Thompson Sorell** | **(540) 659-1296** | **05-14-1960** |

| Street Address | City, State and ZIP Code |
|---|---|
| **17 Saint Davids Court, Stafford, VA 22556** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **DC DEPARTMENT OF CORRECTIONS** | **500 or More** | **(202) 673-8276** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1901 D Street, S.E.,  Washington, DC 20003** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER *(Specify below.)* | Earliest **06-02-2003**  Latest **06-17-2005**  ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I have been employed with the Respondent as a Correctional Officer (SGT), since October 1983 to the present. I am constantly sexually harassed with touching and sexually explicit comments by Sgt. Eugenia Haines, who functions as my Acting Supervisor on occasion. This behavior by Sgt. Haines has subjected me to a hostile work environment. I have reported this to my superiors Captain W. Coley and LT. I. Cobb, both had laughed it off and ignored my complaint. I believe I have been discriminated against based on my sex (female), in violation of Title VII of the Civil Rights Act of 1964, as amended.**

*(stamp:) 1400 L ST NW WASHINGTON D.C. 20005 — 2005 JUN 17 A 11: 17 — EEOC WASHINGTON FIELD OFFICE*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Jun 17, 2005  *Date*  *Billie T. Sorell*  *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*  Exhibit ___2___ |

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| **BILLIE SORRELL,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 07-0853** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

## AFFIDAVIT

I, **NADINE CHANDLER WILBURN**, swear and affirm that the following is true and accurate to the best of my knowledge, information and belief:

1.      I have been the Chief Counsel for the Personnel, Labor & Employment Division with the Office of the Attorney General since January 17, 2007.  Prior to that, I served as the Assistant Deputy Attorney General for the Civil Litigation Division.  In that capacity, I assisted the Deputy of the Division with, among other things, the operation of the Division.  The Deputy and the Assistant Deputy had supervisory authority over the Claims Unit, which was part of the Division, until December 15, 2003.  At that time, the jurisdiction over claims, and the claims investigation process was transferred to the District of Columbia Office of Risk Management.  While under my supervision, the Claims Unit received, processed, and investigated potential claims against the District of Columbia, pursuant to D.C. Official Code § 12-309.

2.      Receipt of written notice of claims against the District of Columbia came directly to the Corporation Counsel's Claims Unit or to the Claims Unit from the Mayor's Correspondence Unit for processing.  When the Claims Unit in the Corporation Counsel's Office received notices of claims either from the Mayor's Office or directly, the Claims Unit logged

receipt of such notice in its Matter Management System. The Civil Litigation Division maintains its claims Matter Management System for claims received and processed while the Claims Unit was in the Division.

3.    I have directed that the Office of the Attorney General conduct a diligent search of its records and have requested that the Office of the Mayor conduct a search of its records. The result of both searches is that a claim letter from or on behalf of Billie Sorrell relating to his potential claim against the District of Columbia as alleged in the complaint in this matter was not received by the Office of the Attorney General. I understand that the Complaint involves allegations of same sex harassment under the D.C. Human Rights Act.

4.    I have provided this affidavit of my own free will and was neither coerced, threatened nor promised remuneration of any kind to do so.

Dated: June 12, 2007.

_____
NADINE CHANDLER WILBURN

I, _____, a Notary Public in and for the District of Columbia, do hereby certify that, NADINE CHANDLER WILBURN, whose name is signed to the foregoing Affidavit, bearing the date the 12th day of June 2007, personally appeared before me and executed the said Affidavit, and acknowledged the same to be her act and deed.

And the said, NADINE CHANDLER WILBURN, further made oath that she had carefully read and fully understood the same, and that her execution thereof was voluntary.

Given under my hand and official seal this 12th day of June, 2007.

_____
NOTARY PUBLIC

My commission expires:_____

JULIA JOHNSON
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires March 31, 2010

2

# EXHIBIT C

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

GEORGE KENNETH MCFARLANE,　　　:
　　　Plaintiff,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:　Case No. 04-CA-8506
　　　　　v.　　　　　　　　　　　:　Cal. No. 8
　　　　　　　　　　　　　　　　　:　Judge Russell F. Canan
NEW LEADERS FOR　　　　　　　　:
NEW SCHOOLS, et al.,　　　　　　:
　　　Defendants.　　　　　　　　:

### <u>ORDER</u>

This matter is before the Court on the following motions:

(1)  Defendant New Leaders for New Schools's ("NLNS") Motion to Dismiss Plaintiff's Amended Complaint ("NLNS's Motion to Dismiss"), filed March 1, 2005, plaintiff's opposition thereto, and defendant NLNS's reply;

(2)  Defendant District of Columbia Public Schools's ("DCPS") Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment ("DCPS's Motion to Dismiss or for Summary Judgment"), filed April 20, 2005, plaintiff's opposition thereto, and defendant DCPS's reply;

(3)  Defendant NLNS's Motion for Sanctions and Costs ("NLNS's Motion for Sanctions"), filed May 27, 2005, and plaintiff's opposition thereto;

(4)  Defendants' Joint Motion for a Protective Order Staying Discovery Pending Resolution of Defendants' Motion to Dismiss ("Defendants' Motion for a Protective Order"), filed June 21, 2005, and plaintiff's opposition thereto; and

(5)  Plaintiff's Motion for Sanctions and Costs Against Defendant NLNS ("Plaintiff's Motion for Sanctions"), filed July 13, 2005; and defendant NLNS's opposition thereto.

## (1)  NLNS's Motion to Dismiss

Plaintiff George Kenneth McFarlane ("McFarlane") was terminated from

the NLNS fellowship program and from employment with the DCPS in November


Case: 2004 CA 008506 B

2003. Plaintiff filed a complaint against NLNS on November 3, 2004 based on his November 2003 termination. The Board of Education of the District of Columbia was also named in the original complaint. Subsequently, plaintiff filed a verified amended complaint, substituting DCPS for the Board of Education on February 2, 2005. It is this verified amended complaint ("Plaintiff's Amended Complaint") that is the subject of NLNS's Motion to Dismiss. In Plaintiff's Amended Complaint, plaintiff asserts the following claims: (1) a public policy tort by NLNS and DCPS; (2) violation by DCPS of the Whistleblower Protection Act, D.C. Code §§ 1-615.51 to1.615.59 (2001); (3) racial discrimination under the District of Columbia Human Rights Act (DCHRA), D.C. Code §§ 2-1401.01 to 2-1403.17 (2001) by NLNS and DCPS; (4) defamation and false light by NLNS; and (5) failure of DCPS to pay all of plaintiff's wages.

NLNS's Motion to Dismiss asserts that plaintiff has failed to state a claim for relief with regard to Count 1 (public policy tort); Count 3 (DCHRA); and Count 4 (defamation and false light). Regarding Counts 1 and 3, defendant argues that plaintiff has failed to state a claim for relief under Superior Court Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), because plaintiff has failed to allege that NLNS was an employer of plaintiff. Regarding Count 4, defendant argues that plaintiff has failed to adequately plead the elements of defamation and false light.

<u>Standard of Review</u>

Dismissal for failure to state a claim under Rule 12(b)(6) is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Owens v. Tiber Island Condominium Ass'n, et al.*, 373 A.2d 890, 893 (D.C. 1977) (citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957)). In the context of a Rule 12(b)(6) motion, the court must view the complaint in the light most favorable to the plaintiff, and plaintiff's allegations must be taken as true. *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 (D.C. 1979).

<u>Counts 1 and 3: Public Policy Tort and DCHRA</u>

An employee may bring an action for wrongful discharge in violation of public policy only against a former employer. *Adams v. George W. Cochran & Co., Inc.*, 597 A.3d 28, 34 (D.C. 1991). Likewise, the DCHRA permits claims for discrimination only against employers, employment agencies, and labor organizations. *See* D.C. Code § 2-1402.11(a). Under the DCHRA, an employer is: "any person who, for compensation, employs an individual . . . ; any person acting in the interest of such employer, directly or indirectly; and any professional association." § 2-1401.02. District of Columbia courts apply the following factors in determining whether an employment relationship exists: "(1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer."

3

*Moorehead v. District of Columbia*, 747 A.2d 138, 143 (D.C. 2000) (citations omitted). The fourth factor, whether the entity has the power to control the servant's conduct, is the most important. *Judah v. Burton Reiner and Morris Mgmt.*, 744 A.2d 1037, 1039 (D.C. 2000). Two distinct entities may be deemed joint employers if they "share or co-determine those matters governing essential terms and conditions of employment." *Dunkin' Donuts Mid-Atlantic Distribution Ctr., Inc. v. NLRB*, 363 F.3d 437, 440 (D.C. Cir. 2004).

First, plaintiff has sufficiently alleged that NLNS participated in selecting and hiring plaintiff. The fact that plaintiff's contract with NLNS provided that DCPS would hire all NLNS fellows in the District of Columbia public schools, Pl's Am. Compl. ¶ 17, tends to show that NLNS participated in the hiring process for DCPS employees, at least with respect to NLNS fellows. Plaintiff also alleged he received a letter from Ms. Jacqueline Davis, Executive Director of NLNS's Washington Office, on July 16, 2003, confirming plaintiff's contract with NLNS and confirming that plaintiff would be employed by DCPS at the rate of $68,000 for the following school year. *Id.* ¶ 21. This letter similarly tends to show NLNS's participation in the hiring process. Plaintiff also avers that NLNS assigned plaintiff to Adelaide Davis Elementary School, against the wishes of that school's principal, with whom plaintiff would be working. *Id.* ¶ 28. This further evidences NLNS's participation in the selection and hiring process.

Second, DCPS paid plaintiff's salary. This factor weighs in favor of NLNS, however, it is not dispositive. Third, plaintiff sets forth several facts

4

tending to show that NLNS possessed the power to terminate plaintiff, through its participation in plaintiff's termination from both entities. Plaintiff claims that Ms. Davis, director of NLNS's District of Columbia office, ordered plaintiff not to return to his former school and took his DCPS identification and keys to the school. *Id.* ¶ 80. If true, this would tend to show NLNS's participation in plaintiff's termination. Further, plaintiff asserts that on November 6, 2003, "Ms. Davis terminated plaintiff's employment with NLNS and the DCPS, effective the same day." Pl.'s Am. Compl. ¶ 71. Ms. Davis then told plaintiff that he could be placed in another DCPS school, if NLNS was pleased with him. *Id.* ¶ 78. NLNS, however, was not pleased with plaintiff and therefore terminated him. *Id.* The fact that NLNS could have placed plaintiff in another DCPS school but chose not to, demonstrates NLNS's participation in plaintiff's termination from DCPS.

Fourth, the Court finds that plaintiff has alleged sufficient indicia of NLNS's power to control plaintiff's conduct. Plaintiff asserts that NLNS (along with DCPS) supervised and evaluated plaintiff. *Id.* ¶ 96. Plaintiff further alleges he attended NLNS weekly meetings and met regularly with his NLNS leadership coach, who in turn met with plaintiff's co-workers at Adelaide Davis Elementary. *Id.* ¶ 34, 46. Plaintiff's allegation that NLNS had the power to transfer him to another school within DCPS, *id.* ¶ 78, further supports plaintiff's argument that NLNS had the power to control plaintiff's conduct.

5

The fifth factor, whether the work is part of the employer's regular business, weighs in favor of NLNS, because NLNS provides leadership training and guidance, and DCPS runs the District of Columbia public schools. The Court may only grant a motion to dismiss, however, if it appears that no set of facts supporting plaintiff's claim would entitle him to relief. Here, plaintiff has alleged facts that may support plaintiff's claim that NLNS and DCPS were joint employers. As such, the Court shall deny NLNS's Motion to Dismiss with respect to Count 1 (public policy tort) and Count 3 (DCHRA).

### Count 4: Defamation and False Light

NLNS argues plaintiff has failed to adequately allege the elements of defamation and false light. Plaintiff bases his complaint for defamation and false light on three events: (1) a November 6, 2003 statement by Ms. Davis to the District of Columbia NLNS fellows that plaintiff had committed a serious offense ("November 6 Statement"); (2) a November 6 e-mail by Ms. Coles, NLNS's National Director of Leadership Coaching, to NLNS fellows in New York and Chicago ("November 6 E-mail"); and (3) a statement by NLNS or Principal Morse to third persons that plaintiff had called African American students "monkeys" and that he had terrified a pre-kindergarten student, made between November 7 and 11, 2003 ("November 7-11 Statements"). The Court shall consider each allegedly defamatory statement in turn.

Defamation requires proof of the following elements:

(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's

6

fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Oparaugo v. Watts*, 2005 D.C. App. LEXIS 501, at * 31 (D.C. Oct. 6, 2005) (citing

*Crowley v. North Am. Telecomms. Ass'n*, 691 A.2d 1169, 1173 n.2 (D.C. 1997).

"[A]n allegedly defamatory remark must be more than unpleasant or offensive; the

language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Howard*

*University v. Best*, 484 A.2d 958, 988 (D.C. 1984) (quoting *Johnson v. Johnson*

*Publishing Co.*, 271 A.2d 696, 697 (D.C. 1970)). "If it appears that the statements

are at least capable of a defamatory meaning, whether they were defamatory and

false are questions of fact to be resolved by the jury." *Klayman v. Segal*, 783 A.2d

607, 607, 613 (D.C. 2001) (citations omitted).

To assert a claim for false light, plaintiff must allege: "(1) publicity; (2) about

a false statement, representation, or imputation; (3) understood to be of and

concerning plaintiff; and (4) which places the plaintiff in a false light that would be

[highly] offensive to a reasonable person." *Id.* at 613-14.

### November 6 Statement

Defendant NLNS argues that plaintiff has not sufficiently alleged that any

portion of the statement was false or defamatory. Plaintiff asserts that Ms. Davis

told the D.C. NLNS fellows that plaintiff had committed a "serious offense." Pl.'s

Am. Compl. ¶ 84. For the purposes of this motion, the Court assumes this

statement is false, as plaintiff avers there was no good cause for the termination.

*See Klayman*, 783 A.2d at 613 (citation omitted) (assuming, as alleged in the

7

complaint, "the falsity of any express or implied factual statements" made by defendant). The Court concludes this statement may also be defamatory, as it is possible that being accused of a "serious offense" may cause an administrator of an elementary school to appear odious or infamous. NLNS does not contest the remaining factors, therefore, the Court shall deny NLNS's Motion to Dismiss, regarding plaintiff's claim that the November 6 Statement was defamatory. Similarly, the Court shall deny NLNS's Motion to Dismiss plaintiff's false light claim with respect to the November 6 Statement, as it is possible that an accusation of having committed a serious offense would be highly offensive to a reasonable person.

### November 6 E-mail

NLNS argues that the November 6 E-mail contains no false statements. The Court agrees. The November 6 E-mail reads, in pertinent part: "Unfortunately, for both legal reasons and our desire to respect confidentiality, we are not in a position to discuss the details of Ken's removal from the program." Pl.'s Am. Compl. ¶ 84. It is not disputed that plaintiff was removed from NLNS, and it appears that NLNS had previously declined to discuss the details of plaintiff's termination for confidentiality reasons. Pl.'s Am. Compl. ¶ 75. Therefore, plaintiff cannot legitimately rely on the falsity of defendant's e-mail to support his claim for defamation.

Instead, plaintiff relies on defamation by implication, claiming "the email's tone and language (referring to 'legal reasons' and a desire to respect 'confidentiality') implied that Mr. McFarlane had committed a serious offense which could not be

8

explained publicly." Pl.'s Am. Compl. ¶ 86. Defamation by implication is recognized

in the District of Columbia. *See White v. Fraternal Order of Police*, 909 F.2d 512,

518-19 (D.C. Cir. 1990) (stating that under District of Columbia law a true statement

may be capable of a defamatory inference); *Guilford Trans. Indus. v. Wilner*, 760

A.2d 580, 596 (D.C. 2000) (recognizing defamation by implication where defamatory

statements are not expressly stated). Defamation by implication, however, requires

"additional, affirmative evidence suggesting that the defendant *intends* or *endorses*

the defamatory interest" in order for the statement to be deemed defamatory. *White*,

909 F.2d at 520. The *White* Court cautioned: "[i]n entertaining claims of defamation

by implication, courts must be vigilant not to allow an implied defamatory meaning to

be manufactured from words not reasonably capable of sustaining such meaning."

*Id.* at 519; *see also Guilford*, 760 A.2d at 596 (stating that defamation by implication

"requires careful exegesis to ensure that imagined slights do not become the basis

for costly litigation"). Here, the Court concludes there is no evidence that NLNS

intended the email to be perceived in a defamatory manner and that the email is not

reasonably capable of bearing a defamatory meaning. As to plaintiff's false light

claim, the Court concludes that no reasonable person could perceive the November 6

E-Mail as highly offensive. Accordingly, as the e-mail is neither false, defamatory,

nor highly offensive to a reasonable person, the Court shall grant NLNS's Motion to

Dismiss with respect to the November 6 E-mail.

9

<u>November 7-11 Statements</u>

Defendant argues that plaintiff has failed to state a claim for defamation with respect to the November 7-11 Statements because plaintiff has not alleged it was NLNS who published the statements nor has plaintiff alleged that NLNS made these statements to a specific third party.  Plaintiff's complaint avers: "between November 7 and 11, 2003, NLNS or Principal Morse maliciously fabricated claims that [plaintiff] had called African American students 'monkeys' and that he had terrified a pre-kindergarten student.  NLNS or Principal Morse published these false statements to third persons."  Pl.'s Am. Compl. ¶ 90.

The District of Columbia has not adopted a higher pleading standard for defamation that would specifically require plaintiff to plead the time, place, content, speaker and listener of the allegedly defamatory statement.  *Oparaugo*, 2005 D.C. App. LEXIS 501, at *35.  Instead, the court must look at whether the complaint pleads sufficient facts to permit defendants to adequately respond.  *Id.*  Here, it appears that plaintiff's allegations are sufficient to allow NLNS to form a responsive pleading because plaintiff has alleged that the statements have occurred within a specific time period, and were published by either of two parties to the lawsuit.  Further, taking the complaint in the light most favorable to plaintiff, it does not appear beyond a doubt that plaintiff can prove no set of facts allowing recovery.  Should plaintiff fail to name a single person who heard the alleged statement after adequate discovery, summary judgment would be appropriate.  *See Howard University v. Best*, 484 A.2d 958, 989 (D.C. 1984).  At this stage, however, the Court concludes plaintiff

10

has pled adequate facts to survive a motion to dismiss with respect to the November

7-11 Statements.  With respect to plaintiff's false light claim, the Court concludes

plaintiff has sufficiently demonstrated publicity.  Defendant does not contest the

remaining factors.  NLNS's Motion to Dismiss shall therefore be denied with respect

to the November 7-11 Statements.

**(2)  Defendant DCPS's Motion to Dismiss or for Summary Judgment**

In support of its motion, DCPS argues that plaintiff has failed to comply with

D.C. Code § 12-309 (2001) and that plaintiff has failed to state a claim under the

Whistleblower Protection Act, D.C. Code §§ 1-615.51 to 1.615.59 (2001).  In Count 1,

plaintiff asserts DCPS wrongfully discharged plaintiff in violation of public policy.

In Count 2, plaintiff asserts that DCPS has violated the Whistleblower Protection Act

("WPA").  Count 3 alleges DCPS violated the DCHRA, and in Count 5, plaintiff claims

that DCPS failed to pay his final paycheck.

<u>Standard of Review</u>

The applicable standard for a motion to dismiss was discussed earlier with

respect to NLNS's Motion to Dismiss.  Should the Court consider DCPS's affidavits,

the Court must treat DCPS's motion as one for summary judgment.  *Herron v.*

*Veneman*, 305 F. Supp.2d 64, 70 (D.D.C. 2004).  "To prevail upon a motion for

summary judgment, the moving party must clearly demonstrate that there is no

genuine issue of material fact and that he or she is entitled to judgment as a matter of

law." *O'Donnell v. Associated General Contractor's of America*, 645 A.2d 1084, 1086

(D.C. 1994) (citations omitted); *see Grant v. May Department Stores Co.*, 786 A.2d

11

580, 583 (D.C. 2001); *Galloway v. Safeway Stores, Inc.*, 632 A.2d 736, 738 (D.C. 1993) ("Summary judgment is appropriate only if there are no genuine issues of material fact in dispute and if the moving party is entitled to judgment as a matter of law."); *Young v. Sherwin Williams Co.*, 569 A.2d 1173, 1175 (D.C. 1990); *Holland v. Hannan*, 456 A.2d 807, 814 (D.C. 1983); *Nader v. Toledano*, 408 A.2d 31, 41 (D.C. 1979); Super. Ct. Civ. R. 56(e).

A motion for summary judgment should be granted when "(1) taking all reasonable inferences in the light most favorable to the non-moving party, (2) a reasonable juror, acting reasonably, could not find for the non-moving party, (3) under the appropriate burden of proof." *Galloway*, 632 A.2d at 738 (citing *Nader*, 408 A.2d at 42). The party moving for summary judgment has the burden of proving an "absence of material disputed issues and the right to judgment as a matter of law." *Id.* (citation omitted). Such a burden may be satisfied by demonstrating "that there is a lack of evidence to support the plaintiff's case." *Id.*

Once a party has set forth a prima facie showing, the burden shifts to the non-moving party to produce specific evidence demonstrating that a genuine issue of material fact does exist and that the moving party is not entitled to judgment as a matter of law. *Spellman v. American Security Bank, N.A.*, 504 A.2d 1119, 1122 (D.C. 1986). "Conclusory allegations by the nonmoving party are insufficient to establish a genuine issue of fact or to defeat the entry of summary judgment." *O'Donnell*, 645 A.2d at 1086 (quoting *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198 (D.C. 1991)); *see Boulton v. Inst. of Int'l Educ.*, 808 A.2d 499, 502 (D.C. 2002).

Section 12-309 of the District of Columbia Code sets out mandatory notification requirements that must be followed in order to maintain an action against the District of Columbia for unliquidated damages. D.C. Code § 12-309 (2001). Under § 12-309, a plaintiff must give notice in writing to the Mayor of the time, place, cause and circumstances of the damages within six months of date of injury. *Id.* This requirement can also be fulfilled by a written police report of the incident. *Id.* "Strict compliance with the terms of § 12-309 is 'mandatory as a prerequisite to filing suit against the District.'" *Chidel v. Hubbard*, 840 A.2d 689, 695 (D.C. 2004) (citations omitted). Section 12-309 is strictly construed because it "is in derogation of the common law principle of sovereign immunity." *District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995). The purpose of § 12-309 is "(1) to protect the District of Columbia against unreasonable claims and (2) to give reasonable notice to the District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted." *Id.*

Here, plaintiff argues that he gave sufficient notice to the D.C. government of plaintiff's claims by writing a letter to DCPS's general counsel. While admitting he did not address his letter to the Mayor, plaintiff asserts he "satisfied the spirit" of § 12-309. Pl.'s Opp. to DCPS's Mot. at 10. Plaintiff's argument is similar to one raised before the Court of Appeals in *Campbell v. District of Columbia*, 568 A.2d 1076, 1077 (D.C. 1990). In *Campbell*, the plaintiff argued that filing and serving a complaint, within the six-month period, on the Mayor "satisfied the intent and spirit of the notice requirement under § 12-309." *Id.* The Court of Appeals disagreed, emphasizing the

13

strict construction of § 12-309. *Id.* In light of § 12-309's strict construction, merely giving notice to DCPS's general counsel is not sufficient. Even if the District received actual notice of the potential claim through DCPS's general counsel, plaintiff's failure to satisfy § 12-309 is fatal. *See Doe v. District of Columbia*, 697 A.2d 23, 29 (D.C. 1997) ("Whether the District had actual notice of Jane Doe's potential claim is not an appropriate consideration under § 12-309."). As plaintiff has failed to give timely, written notice to the Mayor, Ex. 1, Dailey Aff., DCPS's Mot. to Dismiss or for Summ. J., the Court shall grant summary judgment in favor of DCPS with respect to Count 1 (public policy tort).

Plaintiff asserts that the DCHRA does not require compliance with § 12-309. The statute, however, clearly requires written notice to the Mayor, regardless of whether the claim is statutory or based on the common law. *See* § 12-309. It is well-established that a plaintiff with unliquidated statutory claims against the District must satisfy § 12-309, even if the particular statute under which the claim is brought does not specifically require it. *See Doe*, 697 A.2d at 25 (holding that plaintiff failed to satisfy the notice requirements of § 12-309 where plaintiff's claim was based on statutory law, the District of Columbia Prevention of Child Abuse and Neglect Act, D.C. Code §§ 6-2101 *et seq.* (1995), which did not mention § 12-309). Similarly, plaintiff's WPA claim must also fail, as plaintiff has not alleged compliance with § 12-309. The Court shall therefore grant summary judgment in favor of DCPS on Count 3 (DCHRA) and Count 2 (WPA). As such, the Court need not address DCPS's argument that plaintiff failed to establish a cause of action under the WPA.

14

Although DCPS asks the Court to dismiss all of plaintiff's claims, it does not specifically address Count 5, plaintiff's claim for unpaid wages.  Plaintiff asserts DCPS did not pay his wages for the September 21, 2003 to October 4, 2003 pay period.  The Court assumes plaintiff's salary is not disputed, therefore, plaintiff has a claim for liquidated damages and plaintiff need not give § 12-309 notice with respect to this claim.  As such, the Court shall deny defendant's motion to dismiss with respect to Count 5.

### (3) NLNS's Motion for Sanctions

NLNS asks the Court to award sanctions and costs against plaintiff and his counsel, Alan Banov ("Banov") based on Banov's inclusion of the November 6, 2003, e-mail informing Chicago and New York NLNS fellows that plaintiff had been terminated in the Amended Complaint.

"'The central purpose of Rule 11 is to deter baseless filing . . . and thus . . . streamline the administration and procedure of the . . . courts.'" *Williams et al. v. Bd. Of Trustees of Mount Jezreel Baptist Church, et al.*, 589 A.2d 901, 911 (D.C. 1991) (*quoting Cooter & Gell v. Hartmax Corp.*, 486 U.S. 384, 392 (1990)).  The Court notes that excessive motions practice on the issue of sanctions will not serve Rule 11's purpose of streamlining the administration of justice.  The Court hereby advises the parties that it strongly disfavors any further filings relating to the issue of sanctions while the case is still ongoing, as the Court fears an inundation with multiple tangential issues will prevent the resolution of this case.

15

Accordingly, the Court declines to rule on a motion for sanctions at this stage in the proceedings, without the benefit of a complete record. The Court shall therefore deny NLNS's Motion for Sanctions without prejudice, with leave to renew after the completion of the case.

**(4) Defendants' Motion for a Protective Order**

Defendants NLNS and DCPS ask the Court to issue a protective order staying discovery pending resolution of Defendants' Motion to Dismiss. As the Court herein resolves all pending motions, Defendants' Motion for a protective order shall be denied as moot.

**(5) Plaintiff's Motion for Sanctions**

Plaintiff's Motion for Sanctions seeks sanctions and costs against NLNS based on the filing of NLNS's Motion for Sanctions. For reasons set forth with respect to NLNS's Motion for Sanctions, the Court declines to rule on the parties' motions for sanctions at this juncture. Thus, Plaintiff's Motion for Sanctions shall be denied without prejudice, with leave to renew after the completion of the case.

Accordingly, it is this _10_ day of November, 2005,

**ORDERED** that (1) Defendant NLNS's Motion to Dismiss Plaintiff's Amended Complaint shall be **GRANTED IN PART** and **DENIED IN PART**; and it is,

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to Count 1 (public policy tort) shall be **DENIED**; and it is

16

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to Count 3 (DCHRA) shall be **DENIED**; and it is

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to Count 4 (Defamation) shall be **GRANTED IN PART** and **DENIED IN PART**.

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to the November 6 Statement shall be **DENIED**; and it is

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to the November 6 E-mail shall be **GRANTED**; and it is

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to the November 7-11 Statements shall be **DENIED**; and it is

**FURTHER ORDERED** that (2) DCPS's Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment shall be **GRANTED IN PART** and **DENIED IN PART**; and it is

**FURTHER ORDERED** that DCPS's Motion to Dismiss shall be **GRANTED** with respect to Count 1 (public policy tort), Count 2 (WPA), and Count 3 (DCHRA); and it is

**FURTHER ORDERED** that DCPS's Motion to Dismiss shall be **DENIED** with respect to Count 5 (failure to pay all plaintiff's wages); and it is

FURTHER ORDERED that (3) Defendant NLNS's Motion for Sanctions and Costs shall be **DENIED WITHOUT PREJUDICE**; and it is

FURTHER ORDERED that (4) Defendants' Joint Motion for a Protective Order Staying Discovery Pending Resolution of Defendants' Motion to Dismiss shall be **DENIED AS MOOT**; and it is

FURTHER ORDERED that (5) Plaintiff's Motion for Sanctions and Costs Against Defendant NLNS shall be **DENIED WITHOUT PREJUDICE**; and it is

FURTHER ORDERED that the parties shall agree on a proposed scheduling order, which shall be submitted to the Court within 10 days of the docketing of this Order.

**RUSSELL F. CANAN**
**JUDGE**
**(Signed in Chambers)**

Copies to:

Alan Banov
Norberto Salinas
Alan Banov & Associates
1819 L Street, NW
Suite 700
Washington, DC 20036

18

Nicola N. Grey
Office of the Attorney General
441 4th Street, NW
6th Floor South
Washington, DC 20001

Jennifer Gardner Levy
Jamenda Briscoe
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Washington, DC 20005

19

# EXHIBIT D

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

WILLIAM DESCUTNER,                          )
                                            )
      **Plaintiff,**              )
                                            )
      **v.**                      )        Civil Action No. 04ca7214
                                            )        Calendar 1 – Judge Fisher
DISTRICT OF COLUMBIA,                       )
                                            )
      **Defendant.**              )

## <u>ORDER</u>

    This matter is before the court for consideration of Defendant District of

Columbia's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment,

Plaintiff's Opposition thereto, and Defendant's Reply to Plaintiff's Opposition.  For the

reasons set forth in the accompanying Memorandum of Points and Authorities it is this

<u>1 ST</u> day of March 2005 hereby

        **ORDERED** that the Defendant's Motion to Dismiss is **GRANTED.**


                Gerald I. Fisher
                Associate Judge

1

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| WILLIAM DESCUTNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04ca7214 |
| | ) | Calendar 1 – Judge Fisher |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF ORDER GRANTING MOTION TO DISMISS

In this case the Plaintiff alleges that the District of Columbia engaged in unlawful discrimination against him on the basis of disability, in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1401, *et seq.* (2004) ("Human Rights Act"), when the D.C. Fire and Emergency Medical Services Clinic withdrew Plaintiff's conditional job offer for a position as a Firefighter-Basic Paramedic due to deficient vision in his left eye. Plaintiff seeks immediate instatement as an unrestricted Paramedic/Firefighter, back and front pay including benefits, compensatory damages, costs and attorney's fees. Defendant, the District of Columbia, asserts that this case should be dismissed under D.C. Code §12-309 (2001) for failure of the Plaintiff to provide the District of Columbia timely notice of the complaint. Plaintiff supplies two arguments in opposition to Defendant's motion. First, he argues that under the exhaustion doctrine the matter has not accrued for purposes of triggering the duty to comply with the notice requirement of §12-309, because he filed a request for reconsideration with the Police and Fire Clinic, which has yet to be decided. Second, he

2

contends that claims filed under the Human Rights Act are not subject to §12-309's time requirement.

A. Compliance with D.C. Code § 12-309

D.C. Code §12-309 states, in pertinent part,

An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

Congress enacted §12-309 in 1933 "to deal with cases in which suits were filed against the District before the statute of limitations expired but long after the occurrence of the underlying event, a circumstance which often made it impossible for the District of Columbia to obtain evidence for use in litigation which may result." H.R. REP. No. 2010, 72d Cong., 2d Sess. 1 (1933). The notice requirement of §12-309 differs from the statute of limitations requirement and was designed specifically to avoid the pitfalls of the statute of limitations. Gwinn v. District of Columbia, 434 A.2d 1376 (D.C. 1981). The statute of limitations is triggered from the time the right to maintain an action accrues. District of Columbia v. Dunmore, 662 A.2d 1356, 1359 (D.C. 1995). However, the point in time when the action accrues is irrelevant for purposes of triggering § 12-309. DeKine v. District of Columbia, 422 A.2d 981, 985 (D.C. 1980). Instead, §12-309 is triggered the moment the plaintiff sustains the alleged injury, not from the moment the cause of action accrues. Id.; see also Brown v. District of Columbia, 853 A.2d 733 (D.C. 2004).

The Plaintiff relies on Pinkney v. District of Columbia, 439 F. Supp. 519 (D.D.C. 1977), to support his argument that under the exhaustion doctrine he is not required to comply with §12-309 until the reconsideration process is finalized by the Police and Fire

3

Clinic. (Opp. at 6–8).  Pinkney held that where exhaustion is a necessary condition of bringing a suit the notice requirement of §12-309 is not triggered until the completion of the administrative appeal.  Pickney, 439 F. Supp. at 519.  This Court, as the Defendant notes in its Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, is not bound by the decision in Pinkney.  See M.A.P. v. Ryan, 285 A.2d 310 (D.C. 1971).

This Court is bound by the decisions of our Court of Appeals which have strictly construed the time limitation contained in §12-309, see Gross v. District of Columbia, 734 A.2d 1077, 1081 (D.C. 1999); Doe by Fein v. District of Columbia, 697 A.2d 23, 29 (D.C. 1997), even when that interpretation has brought about harsh results, including extinguishment of meritorious claims.  See, e.g., District of Columbia v. Arnold & Porter, et al., 756 A.2d 427, 436-37 (D.C. 2000) (Although some plaintiffs had demonstrated District of Columbia's negligence at trial, claims of other plaintiffs dismissed for failure to comply with notice requirement of §12-309).

This Court also is influenced by the reasoning of the Supreme Court in the analogous anti-discrimination case of Delaware State College v. Ricks, 449 U.S. 250 (1980).  At issue in Ricks was whether the 180-day time limit for filing with the Equal Employment Opportunity Commission (EEOC) began at the time Mr. Ricks was informed by Delaware State College that he was not granted tenure or, instead, when the Board of Trustees informed Mr. Ricks that the grievance he had filed was denied.  The Supreme Court held that the time limit for filing with the EEOC began at the first communication by the college to Mr. Ricks that he would not receive tenure.  The Court reasoned that, "entertaining a grievance complaint of the tenure decision does not suggest that the earlier decision was in any respect tentative.  The grievance procedure, by its

4

nature, is a remedy for a prior decision, not an opportunity to influence that decision before it is made." Id. at 261. This Court similarly holds that the requirement to comply with the notice requirement of §12-309 was triggered when the Plaintiff received the letter informing him that his conditional job offer was withdrawn, not when the Police and Fire Clinic decides his request for reconsideration.

## B. D.C. Human Rights Act

In his opposition, Plaintiff also argues that providing notice under §12-309 is not a requirement for brining a claim under the Human Rights Act because the Act contains no references to §12-309 or any other notice requirement. (Opp. at 9). Plaintiff further argues that the inclusion of language in other D.C. statutes, such as the Whistleblower Protection Act, D.C. Code §1-615.54(a) (2001), directing compliance with §12-309 "evidences a legislative intent that the §12-309 notice is not required for claims under D.C. Human Rights Act." (Opp. at 9-10). Plaintiff's argument is unsupported by any authority and ignores the plain language of §12-309 which clearly states that "an action *may not be maintained* against the District of Columbia" unless the notice requirement of §12-309 is complied with. D.C. Code, §12-309 (2001) (emphasis added). In addition, the Court of Appeals has held that §12-309 "imposes a notice requirement on everyone with a tort claim against the District of Columbia." Dunmore, 662 A.2d at 1358. Plaintiff's argument fails because a claim under the Human Rights Act, like any other tort claim against the District of Columbia, must comply with the requirements of §12-309.

## C. Conclusion

Compliance with D.C. Code, §12-309 is mandatory. See District of Columbia v. Dunmore, 662 A.2d 1356 (D.C. 1995); Hardy v. District of Columbia, 616 A.2d 338, 340

(D.C. 1992); <u>Romer v. District of Columbia</u>, 449 A.2d 1097, 1101 (D.C. 1982); <u>Gwinn v.</u>

<u>District of Columbia</u>, 434 A.2d 1376, 1378 (D.C. 1981). Plaintiff's notice requirement

under §12-309 was triggered at the time he received the letter from the D.C. Fire and

Emergency Medical Services Clinic withdrawing his conditional job offer. Plaintiff

received the letter withdrawing his conditional job offer on February 11, 2004 and sent a

claim letter to Mayor Anthony Williams on September 10, 2004, approximately a month

after his time limit had expired. Plaintiff was required to comply with §12-309 when

filing a claim under the Human Rights Act and failed to do so. Therefore, Defendant's

Motion to Dismiss must be and is granted.


Gerald I. Fisher
Associate Judge


Copies to:

      Diane A. Seltzer, Esq.
      5301 Wisconsin Avenue, N.W.
      Suite 570
      Washington, DC 20015

      Carl Schifferle, Esq.
      Assistant Attorney General
      Suite 600S
      441 4th Street, N.W.
      Washington, DC 20001